## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

EMMAREAN C. LIGHTSEY,    :
AIS 238811,

                                 :

        Petitioner,

                                 :

vs.                            CA 07-0481-CG-C

                               :

TROY KING, et al.,

                                 :

        Respondents.

## <u>REPORT AND RECOMMENDATION</u>

Emmarean C. Lightsey, a state prisoner presently housed at the Montgomery Women's Facility in Mount Meigs, Alabama (Doc. 9),[1] has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of her November 23, 2004 murder conviction in the Circuit Court of Perry County, Alabama. On December 20, 2004, Lightsey was sentenced to life imprisonment. Petitioner's conviction and sentence were affirmed on appeal by the Alabama Court of Criminal Appeals on November 10, 2005, *Lightsey v. State*, 954 So.2d 1142 (Ala.Crim.App.

---

[1]    Emma Lightsey filed a notice with this Court on October 22, 2007, that she had been transferred to the Montgomery Women's Facility, P.O. Box 75, Mount Meigs, Alabama 36057. (Doc. 9)

2005) (table); the court overruled her application for rehearing, *id.*, on December 9, 2005 (Doc. 6, Exhibit B, at 2 ("On December 9, 2005, the Alabama Court of Criminal Appeals overruled Petitioner's timely application for rehearing and denied her motion to accept the submitted Statement of Facts.")). The Alabama Supreme Court denied Lightsey's petition for writ of certiorari and issued its certificate of judgment on April 14, 2006. (Doc. 6, Exhibit C) Petitioner filed a Rule 32 petition in the Circuit Court of Perry County, Alabama collaterally attacking her conviction and sentence on July 11, 2006. (Doc. 6, Exhibit D) The trial court dismissed the petition, without a hearing, on June 5, 2007 (Doc. 6, Exhibit E); Lightsey did not appeal the trial court's dismissal of her Rule 32 petition (*see* Doc. 6, Exhibit F, Docket Sheet).

In her petition before this Court, filed June 22, 2007 (Doc. 1, at 12), Lightsey raises the following grounds which she claims entitle her to relief:

(1)  she was denied her Fourteenth Amendment right to an examination to determine if she was competent to stand trial;

(2)  her attorney did not file a motion to suppress a videotape of the deceased;

(3)  she was denied her Sixth Amendment right to a fair and speedy trial;

(4)  the jury was not polled following media accounts chronicling her prior legal problems;

(5)  the prosecutor, without objection from defense counsel, intentionally used peremptory challenges to remove white jurors from the venire;

(6)  the prosecutor commented on her post-arrest silence in violation of her Fifth Amendment right against self incrimination;

(7)  the trial court erroneously allowed three members of the deceased's family to give hearsay testimony;

(8)  the prosecution admitted that the case against her was circumstantial;

(9)  her trial attorney did not contact three witnesses who could have validated her self-defense claim;

(10)  the trial judge denied her a pre-trial hearing and entered a vindictive sentence;

(11)  the Alabama Court of Criminal Appeals erred in finding the statements she challenged as hearsay were not hearsay and then using those statements to find sufficient evidence for her conviction; and

(12)  an inventory of items taken from the crime scene did not list four

items which were later recovered from Agent Guthrie's office.

The respondents contend that this Court is procedurally barred from reaching the merits of all grounds of the petition, save for those two grounds related to the admission of hearsay testimony. With respect to those hearsay claims, respondents contend that Lightsey has failed to establish that the state court's decision regarding these issues was contrary to federal law or an unreasonable application of the law to the facts of her case. This case is ripe for a decision by this Court.

This cause is before the Court on the petition, the respondents' answer, with attachments, and petitioner's response to this Court's procedural default order. A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required.

## **FINDINGS OF FACT**

1.      Lightsey was convicted of the murder of Michael Sapp in the Circuit Court of Perry County, Alabama on November 23, 2004. (Doc. 6, Exhibit A) She was sentenced to life imprisonment on December 20, 2004. (*Id*.) "Lightsey filed a motion for new trial, which was denied by operation of law." (*Id*. at 1-2)

2.  Petitioner then filed a direct appeal from her conviction and sentence in the Alabama Court of Criminal Appeals. (*See id*.) That court affirmed Lightsey's conviction and sentence by memorandum opinion. (*Id*.)

The record reflects that Emma Lightsey was in a common-law marriage with Michael Sapp, with whom she was living in a Strobel house owned by Sapp's employer. Lightsey first met Sapp in 1996 when she was working at the Marion Junction Co-op and Sapp was working for Dunkan Farms. They began a relationship which led to their engagement in January 2002. Lightsey testified that their relationship was "tumultuous almost from the beginning" and their relationship worsened after they began living together. She further testified that Sapp and she drank four half-gallon containers or rum every night until they passed out. She stated that on the weekends, they began drinking at noon. Lightsey testified that Sapp was "the kindest, gentlest man" when sober, but became jealous, possessive and difficult to reason with when he drank. Lightsey testified that when Sapp was intoxicated, he hit her and dragged her through the house by her ankles.

In the summer of 2002, Mary Beth Hatfield, Sapp's first cousin, was visiting with Lightsey and Sapp at their residence when she asked Lightsey a personal question. Lightsey became "irate" and threatened to kill Hatfield. Lightsey denied that she threatened to kill Hatfield.

On another occasion in June or July 2002, when Sapp's daughter, Angela, was visiting with the couple, Lightsey left the house, sat on the porch, and drank alcohol for five hours. When Sapp approached Lightsey later in an attempt to engage in sexual activity with her, Lightsey attempted to get into her car and drive away. Sapp grabbed the strap of her purse to restrain her and she began to kick Sapp, scream, and blow the car horn to prevent Sapp from restraining her. Lightsey then threatened to kill Sapp and his daughter after coming back into the house.

5

Lightsey denied she threatened to kill Sapp and his daughter.

Anita Crawford, whose husband, Bo Crawford, is Sapp's uncle, testified that in the summer of 2002, Bo Crawford received a telephone call from Lightsey. Anita Crawford answered the phone call initially and remained on the line while her husband spoke with Lightsey because Lightsey's voice sounded agitated. Mrs. Crawford heard Lightsey say "if you want to see your son of a bitch nephew you better come get him now or I'm going to kill him." Lightsey denied she threatened to kill Sapp over the phone.

On Labor Day in 2002, Lightsey got into an argument with Sapp and demanded that he leave the kitchen. Sapp approached Lightsey, struck her, and knocked her to the floor. Sapp then grabbed her and tried to pull her up when the handgun that Sapp was carrying in his waistband fell to the floor. Lightsey grabbed the weapon and pointed it at Sapp. Sapp began to leave the kitchen but turned, made a gesture at Lightsey, walked to the refrigerator, and leaned against it. Lightsey then fired the gun into the living room. Sapp then began to move towards Lightsey after calling her either a "stupid bitch" or a "crazy bitch." Lightsey then fired two shots at Sapp and he fell to the floor.

Lightsey dialed the operator to ask for an ambulance. Tory Ratcliff, a Dallas County Haynes ambulance dispatcher, answered the telephone call and Lightsey told Ratcliff [] she needed help because "Michael's been shot." Ratcliff realized that the call was from Perry County, and she realized that she could not send an ambulance to another county. Ratcliff told Lightsey that another ambulance was being sent, but Ratcliff did not contact the Perry County Sheriff's Department because she assumed that someone else would report the incident.

Lightsey hung up the phone and drove to her mother's house and met her sister, Linda Coffer, at the door. Lightsey told her sister that Sapp had been shot. Coffer observed bruises on

Lightsey's hands and scratches on her knees. Lightsey spent the night at her mother's house and, in the morning, Coffer called Billy Faile, Lightsey's attorney. The first time the shooting was reported to the authorities was when Faile contacted the Perry County Sheriff's Department that morning and officers were sent to Sapp's residence where they discovered Sapp's body.

John Bailey of the Alabama Bureau of Investigation found a .38 caliber handgun and projectiles that had been fired from the weapon at the scene. Dr. John McDuffy, the director at the Tuscaloosa laboratory of the Alabama Department of Forensic Sciences, testified that Dr. Michael Glenn performed an autopsy on Sapp and determined the cause of death as a gunshot wound. Dr. Glenn also determined that Sapp did not die until an hour and a half to two hours after being shot. Dr. Glenn could not testify at Lightsey's trial because he was in the hospital at the time.

Lightsey argues on appeal that the trial court erred in admitting the hearsay testimony from Anita Crawford as to Lightsey's comments to Bo Crawford on the phone, and the hearsay evidence from Angela Sapp as to Lightsey's threat to kill her and her father. Lightsey also argues that the evidence was insufficient to sustain her conviction.

I.

Lightsey argues on appeal that the trial court erred in admitting hearsay testimony from Anita Crawford as to Lightsey's comments to Bo Crawford on the phone, and the hearsay evidence from Angela Sapp as to Lightsey's threat to kill her and her father. The State contends that the testimony was admissible under the Rule 803(3), Ala.R.Evid., "then existing mental condition" exception to the hearsay rule. When Lightsey objected at trial to the admission of the hearsay testimony of Crawford, the trial court responded that the statement was not hearsay. When Lightsey objected at trial to the admission of the hearsay testimony of Sapp, the trial court

responded that the testimony was admissible under Rule 804, Ala.R.Evid., as an admission against interest.

Rule 804(b)(3), Ala.R.Evid., states that a statement against the declarant's interest is an exception to the hearsay rule:

> (3)   Statement Against Interest. A statement which was at the time of its making so contrary to the declarant's pecuniary or proprietary interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Furthermore, Rule 803(3), Ala.R.Evid., states that a statement that shows the mental state of a declarant is an exception to the hearsay rule:

> (3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

> A trial court's order governing the admission or exclusion of evidence constitutes reversible error when the trial court has exceeded its discretion in admitting or excluding the evidence. Where an issue presents a pure question of law, such as one relating to a defendant's constitutional rights, this Court's review is de novo.

This Court has held that hearsay evidence is admissible under Rule 803(3), Ala.R.Evid., when offered for the purpose of showing the declarant's then existing mental state and not offered for the purpose of proving the truth of the statement:

> Rule 803(3), Ala.R.Evid., establishes an exception to the hearsay rule where the out-of-court statement concerns the [t]hen existing mental, emotional, or physical condition of the declarant. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), constitutes an exception to the hearsay [rule]. Thus,
>
>> [a] person's statement of his then existing design, intent, motive, emotion, and the like is admissible as tending to show the existence in him of such intent, plan, motive or design. This is a generally recognized exception to the hearsay evidence rule and holds true though the declarant is neither a party nor the privy of a party to the action and though the declarant is a party who offers the statement in behalf of himself.
>
> It has been recognized that a person's design, plan, or intent to do a certain act is relevant to prove that he did indeed do the particular act in question. Among the ways of proving that he had the design or plan is to show statements by him, prior to the claimed act, indicating that he had the design. Thus, in the present case, the witness's testimony concerning

9

> the victim's statement of her plan, design, or intent to travel home was admissible and relevant to prove that she actually undertook a course of action in order to get home, specifically, hitchhiking with the appellant and his codefendants.

The State offered the testimony of Anita Crawford as to what Lightsey said in the phone call to Crawford's husband to show the mental state of Lightsey. The statement of Angela Sapp was likewise offered to show the mind set and intent of Lightsey. Although the court ruled that Sapp's statement was admissible for reasons other than those argued by the State, and the court did not explain [under] what rule Crawford's statement was admissible, we will not overturn a trial court's ruling if it is correct for any reason:

> If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition.

Because the statements were admissible under Rule 803(3), Ala.R.Evid., Lightsey is not entitled to relief as to this claim.

## II.

Lightsey also argues that the evidence was insufficient to sustain her conviction. In her motion for judgment of acquittal and in her brief on appeal, however, Lightsey does not allege what element or elements of the crime the State failed to prove. Lightsey makes the general allegation that there was not substantial proof that there was an intentional murder. Rule 28(a)(10), Ala.R.App.P., requires the appellant to state in his brief specifically what issues are being challenged and to provide:

> (10) Argument. An argument containing the contentions of the appellant/petitioner with

respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on[.]

This Court has held that a general allegation and the mere citation of case law with no explanation as to the case law's relevancy to the facts of the present case are insufficient to satisfy the requirements of Rule 28(a)(10), Ala.R.App.P., as to the appellant's argument.

Hodges's arguments do not comply with Rule 28(a)(10), Ala.R.App.P. In each of his claims, Hodges cites only a single case; however, he engages in no discussion whatsoever as to how those cases are relevant to the particular issues raised or supportive of his contentions. Merely citing a case with no discussion as to its relevance is insufficient to satisfy Rule 28(a)(10).

We have stated that it is not the function of this court to do a party's legal research. Similarly, we cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.

Because Hodges has failed to comply with Rule 28(a)(10), his final two issues are deemed to be waived.

Lightsey's general challenge to the sufficiency of the evidence with no explanation how the evidence was insufficient to sustain the conviction does not comply with Rule 28(a)(10), Ala.R.App.P.

Moreover, the State provided sufficient evidence to support the conviction. This court has held:

11

>        In deciding whether there is sufficient
> evidence to support the verdict of the jury and the
> judgment of the trial court, the evidence must be
> reviewed in the light most favorable to the
> prosecution. Conflicting evidence presents a jury
> question not subject to review on appeal, provided
> the state's evidence establishes a prima facie case.
> The trial court's denial of a motion for a judgment
> of acquittal must be reviewed by determining
> whether there existed legal evidence before the
> jury, at the time the motion was made, from
> which the jury by fair inference could have found
> the appellant guilty. In applying this standard, the
> appellate court will determine only if legal
> evidence was presented from which the jury could
> have found the defendant guilty beyond a
> reasonable doubt. When the evidence raises
> questions of fact for the jury and such evidence, if
> believed, is sufficient to sustain a conviction, the
> denial of a motion for a judgment of acquittal by
> the trial court does not constitute error.

The State presented the testimony of Angela Sapp, who stated
Lightsey threatened her and her father, and the testimony of
Crawford, who stated that she heard Lightsey threaten Sapp over
the telephone. Furthermore, Lightsey admitted that she shot
Sapp in the kitchen of their home. Additionally, Lightsey did not
report the incident to the police or stay with Sapp to ensure he
received medical attention. The State presented ample evidence
from which the jury could, and did, find that Lightsey
intentionally murdered Sapp.

>        For the foregoing reasons, the judgment of the trial court
> is affirmed.

(*Id.* at 2-10 (internal citations and quotation marks omitted)) Lightsey's

application for rehearing was overruled by the Alabama Court of Criminal

appeals on December 9, 2005 (Doc. 6, Exhibit B, at 2) and, on April 14, 2006, the Alabama Supreme Court denied Lightsey's petition for writ of certiorari (Doc. 6, Exhibit C).

3.      Lightsey filed a Rule 32 petition in the Circuit Court of Perry County, Alabama collaterally attacking her conviction and sentence on July 11, 2006. (Doc. 6, Exhibit D) In her brief in support of the Rule 32 petition, Lightsey raised the following claims: (1) due to her attorney's neglect, she was denied her Fourteenth Amendment right to determine her competency to stand trial; (2) her trial attorney erred in failing to file a motion to suppress the videotape of the deceased; (3) she was denied her constitutional right to a speedy trial; (4) defense counsel erred in polling the jury following media coverage at the beginning of the trial; (5) her attorney was ineffective for allowing the prosecutor to strike Caucasian jurors; (6) the State unlawfully commented on her post-arrest silence; (7) witnesses call by the State testified to hearsay; (8) the prosecutor did not have enough evidence to take the case to a jury because he admitted the case was circumstantial; (9) her attorney provided ineffective assistance by failing to present all of her witnesses to validate her claim of self-defense; (10) her attorney was ineffective for failing to introduce into evidence the 911 tape; (11) she was denied a pre-trial

hearing; (12) the trial court was vindictive during sentencing; (13) the
Alabama Court of Criminal Appeals erred in finding hearsay statements were
not, in fact, hearsay and then turning around and using those statements in
support of finding sufficient evidence for the jury to convict her of the murder
of Michael Sapp; (14) the inventory of items taken from her house did not list
four items which Agent Guthrie later admitted he locked in his office; and (15)
counsel was ineffective in failing to subpoena the ABI file. (*Compare id.*,
SUPPORTING MEMORANDUM BRIEF FOR RULE 32 Petition *with* Doc.
6, Exhibit E))

4.      On June 5, 2007, the trial court entered the following order
denying Lightsey's Rule 32 petition:

> This matter is before the Court on the Defendant's
> petition for relief from conviction or sentence filed pursuant to
> Rule 32 of the Alabama Rules of Criminal Procedure. The Court
> had previously entered an order directing the parties to submit
> evidence by affidavits or written interrogatories or depositions
> in lieu of an evidentiary hearing within sixty (60) days of
> October 27, 2006. The petitioner has failed to submit any
> evidence in support of her petition. The respondent, State of
> Alabama, has filed an affidavit of trial counsel which does not
> address the allegations in the petition.
>
> The Defendant was convicted of Murder following a jury
> trial. She was sentenced to a term of life in prison on December
> 20, 2004. She filed motions for new trial with the trial court both
> of which were denied. She then appealed and the Alabama Court
> of Criminal Appeals confirmed her conviction. A certificate of

affirmance was issued on April 14, 2006. The instant petition was filed on July 11, 2006.

The petitioner has raised several issues in her petition. She first claims that she was denied the right to a competency hearing. This issue is precluded because it could have been but was not raised at trial. Further there is no evidence submitted that there was any issue regarding her competency at trial.

She next contends that her defense counsel did not file a motion to suppress a video of the deceased. There has been no evidence regarding this issue nor has she demonstrated how she was prejudiced by his failure to file a motion to suppress the video. If the video was admitted into evidence it would have been admissible under the rules of evidence and she would not have been entitled to suppress the same anyway.

The petitioner next claims she was denied the right to a speedy trial. A motion for speedy trial was never filed with the Court. There is no evidence to show that she suffered any prejudice based on this claim.

She next claims that defense counsel did not pol[l] the jury after media coverage began of the trial. There has been no evidence presented to show that a different outcome would have resulted by failure of the defense counsel's request that the jury be polled during the trial. There is no evidence that there was any media or other bias o[n] the part of the jury during the trial.

She next claims that her attorney was ineffective by allowing the prosecution to strike Caucasian jurors. There has been no evidence presented to show that defense counsel was ineffective for failing to object to the State's manner of striking the jury nor was there any showing of prejudice or racial bias on the part of the State of Alabama in the manner in which it struck the jury. The petitioner has further failed to show that there would have been a different outcome but for her attorney's performance regarding the jury selection process.

The petitioner next contends that her attorney was ineffective for allowing testimony that does not appear in the trial transcript. She contends that the State commented on her post arrest silence and allowed her to testify regarding her post arrest silence. These statements do not appear in the trial transcript and there is no evidence that this occurred.

The petitioner next claims that witnesses called by the State testified to hearsay. This is a matter that was raised on direct appeal and denied by the Court of Criminal Appeals.

She next contends that there was insufficient evidence to sustain a conviction. This matter was raised on appeal or could have been raised on appeal [and] therefore it is precluded.

The petitioner contends that counsel was ineffective for not calling all defense witnesses. She fails to show which witnesses could have been called and how the outcome of the trial would have been different but for the failure to call these witnesses.

She next contends that her counsel was ineffective because he did not introduce the 911 tape into evidence. There has been no evidence regarding this matter submitted nor has she shown how a different outcome would have resulted if the tapes had been admitted into evidence.

The petitioner next claims that she was denied a pre-trial hearing. She has failed to show[,] allege[,] or prove any prejudice that occurred by not having a pre-trial hearing. There was no reason to have a pre-trial hearing. The petitioner was present during arraignment and she was formerly and legally arraigned on the indictment. There were no pending pre-trial matters that were not raised prior to trial. She has failed to show any prejudice.

The petitioner claims that the trial court was vindictive

during sentencing. There is no evidence shown to support this allegation. She was sentenced within the range of punishment set forth for a Class "A" Felony. She received a proper and legal sentence. She has failed to show any ground for which relief could be granted under Rule 32 by this claim.

She next claims that there was a reference to a letter from her defense attorney. The Court does not understand this allegation and it does not give her a basis for relief under Rule 32.

She next contends that there were certain items recovered from the crime scene by the Alabama Bureau of Investigation which were not turned over to the Defense. She makes no claim[] as to how this could affect the conviction or how it would entitle her to any relief under Rule 32.

Lastly the Defendant contends that her counsel was ineffective by failing to subpoena the ABI file. She fails to allege how this failure would have resulted in a different outcome in her trial.

Based on the foregoing the Court finds that the Defendant's petition for relief from conviction or sentence is due to be and the same is hereby denied. There is no evidence submitted by the petitioner to support her petition and most of the grounds that she raised are either precluded or fail to state a ground fro relief pursuant to Rule 32.

(Doc. 6, Exhibit E)

5.      Petitioner did not appeal the trial court's dismissal of her Rule 32 petition. (*See* Doc. 6, Exhibit F) Instead, Lightsey filed the instant petition in this Court on June 22, 2007. (*See* Doc. 1, at 12)

## **CONCLUSIONS OF LAW**

17

A.    **Procedural Default Doctrine**.

1.    In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554.  This rule applies whether the state law ground is procedural or substantive.  *Id.* at 729, 111 S.Ct. at 2554.  The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id*. at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the

same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S.1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

2.     The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

3.     An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id*. at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.   (citations omitted)   This exhaustion requirement is also grounded in

principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

.        .        .

[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted)   In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.   The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

4.      In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'"  *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct.

3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar.").  In all other cases, the presumption is not applicable.  *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559.  In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts.  *Id.* at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").   Moreover, the presumption "looks through" unexplained orders to the last reasoned decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.  If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*, 501 U.S., at 740, 111 S.Ct., at 2559, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place.  Similarly

21

> where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594. Also, the presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue." *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

5. When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at

750, 111 S.Ct. at 2565.  The cause and prejudice standard applies "uniformly

to all independent and adequate state procedural defaults." *Id.* at 750-751, 111

S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. (citation omitted).  Objective factors that constitute cause include "'interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel."  (citation omitted).   In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." (citation omitted).   Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. (citation omitted).  Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains." (citation omitted).

> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default.   These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.  We have described this class of cases as implicating a fundamental miscarriage of justice. (citation omitted).

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d

517 (1991).

6.      In their answer, the respondents assert that all of Lightsey's claims, save for those dealing with the hearsay claim she raised on direct appeal, are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("[I]n order to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state.") due to petitioner's failure to seek review in the Alabama Court of Criminal Appeals and the Alabama Supreme Court following the trial court's dismissal of her Rule 32 petition (*see* Doc. 6, at 4 & 5 ("All of Lightsey's claims except for those concerning the alleged improper admission of hearsay testimony [] have been procedurally defaulted. . . . Lightsey failed to properly exhaust any claim except for claims (g) and (k) by raising it in the Alabama Supreme Court. . . . [S]he failed to appeal the dismissal of her Rule 32 petition. [] Because the trial court denied Lightsey's Rule 32 petition on June 5, 2007, her time for appealing that decision expired on July 17, 2007. . . . Federal habeas claims not included in a petition for discretionary review with the state's highest court are procedurally defaulted if the time for including such issues in such a petition

has expired.").

7.    It is clear to the undersigned that Lightsey has procedurally defaulted her claims for relief, other than her hearsay and sufficiency of the evidence arguments, based upon her failure to appeal the dismissal of her Rule 32 petition to the Alabama appellate courts and thereby exhaust these claims. *O'Sullivan v. Boerckel*, *supra*, 526 U.S. at 845, 119 S.Ct. at 1732 ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *see also id.* at 848, 119 S.Ct. at 1734 ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.").

8.    Turning to the issue of cause and prejudice, this Court finds that petitioner has met neither prong of the standard. Although Lightsey was extended the opportunity to establish cause and prejudice (*see* Doc. 7), her response to the Court's order does not address either prong;[2] therefore, it is

---

[2]    Petitioner's sole response is that she filed a motion for appointment of counsel which she claims the trial judge ignored. (Doc. 8, at 1) This Court does not find that this

found that the cause and prejudice exception to the procedural default doctrine is not applicable in this case. *See Macklin v. Singletary*, 24 F.3d 1307, 1313 (11th Cir. 1994) (in abuse of the writ case, appellate court suggests that habeas courts need perform no analysis when the petitioner fails to argue an exception to application of the doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995); *Tower v. Phillips*, *supra*, 7 F.3d at 211 (court addressed only the single cause argument proffered by the petitioner).

9. The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the *Murray v. Carrier* standard. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Lightsey to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S. at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324,

---

argument constitutes either a cause or prejudice argument particularly in light of the fact that petitioner filed her federal habeas petition only a little over two weeks after the circuit court's dismissal of her Rule 32 petition.

115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Lightsey has not come forward with any evidence which establishes her actual innocence and thereby undermines her murder conviction. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

### B.   Merits Discussion of Collateral Petition Claims.

10.    Lightsey filed her petition for writ of habeas corpus relief in this Court on or about June 22, 2007, and therefore, her case is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000); *Bottoson v. Moore*, 234 F.3d 526, 530 (11th Cir. 2000), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001). As amended, § 2254 now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[3]

28 U.S.C. § 2254(d)(1) & (2) (footnote added).  Moreover, the Act, as amended, presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

11.     In *Williams v. Taylor, supra*, the Supreme Court held that § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied— the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly

---

[3]     Based upon the facts as found by the Alabama Court of Criminal Appeals in its decision, it is clear that no argument can be made that the decision of the Alabama Court of Criminal Appeals was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts.  More to the point, since this Court must presume as correct the determinations of all factual issues made by the Alabama Court of Criminal Appeals, petitioner simply cannot rebut that presumption of correctness by clear and convincing evidence. The appellate court's findings are based upon what a reasonable jury could have found the evidence to be.

established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 412-413, 120 S.Ct. at 1523; *see Bottoson, supra*, 234 F.3d at 531 ("In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'").

12.    In this case, the Alabama Court of Criminal Appeals  addressed the merits of petitioner's hearsay claims and sufficiency-of-the-evidence

29

claim.[4] Lightsey cannot establish her entitlement to relief under § 2254(d)(1) & (d)(2) with respect to any of these issues. In this regard the undersigned notes generally that petitioner has not and cannot show, under the "contrary to" clause, that the Alabama Court of Criminal Appeals, arrived at any conclusions opposite to those reached by the Supreme Court of the United States on any question of law or decided the case differently than the Supreme

---

[4]      The undersigned views petitioner's (eighth) claim, that the prosecution admitted that the case against her was circumstantial, as her challenge to the sufficiency of the evidence. Lightsey was convicted of murder. In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court held that evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319, 99 S.Ct. at 2789.

Under Alabama law, a person commits the crime of murder if "[w]ith intent to cause the death of another person, he causes the death of that person or of another person[.]" Ala.Code § 13A-6-2(a)(1).  "Because the element of intent, being a state of mind or mental purpose, is usually incapable of direct proof, it may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances." *Cartwright v. State*, 645 So.2d 326, 330 (Ala.Crim.App. 1994) (quotation marks and citations omitted). This element is normally a question for the jury. *See, e.g., Oryang v. State*, 642 So.2d 989, 994 (Ala.Crim.App. 1994). The Alabama Supreme Court has specifically determined that intent to kill may be inferred from the defendant's act of using a deadly weapon. *See, e.g., Ex parte Burgess*, 827 So.2d 193, 199 (Ala. 2000) (citations omitted), *cert. denied*, 537 U.S. 976, 123 S.Ct. 468, 154 L.Ed.2d 335 (2002).

Lightsey testified that she shot Sapp with his own pistol. Though petitioner made a call to 911, she left the premises without ensuring that emergency personnel responded to the call. Sapp died several hours after he was shot by Lightsey. It is as clear to this Court, as it was the Alabama Court of Criminal Appeals, that in light of the foregoing evidence any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. Therefore, the undersigned simply cannot find that the state court adjudication was contrary to such law nor can it be found that the state court unreasonably applied relevant Supreme Court precedent. Moreover, it is not debatable among reasonable jurists that the result of which petitioner complains is incorrect.

Court did in a previous case presenting a set of materially indistinguishable facts.  Moreover, as indicated above, under the "unreasonable application" clause, petitioner has not and cannot establish that the Alabama Court of Criminal Appeals, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case. Here, the Alabama Court of Criminal Appeals, upheld the evidentiary rulings of the trial court and determined that the trial judge committed no error in admitting the testimony of Angela Sapp and Anita Crawford. (Doc. 6, Exhibit A, at 4-7)

13.    It is clear that federal habeas courts are generally not "'empowered to correct erroneous evidence rulings of state trial courts.'" *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir.) (citation omitted), *cert. denied*, 525 U.S. 963, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998); *see Keno v. Crosby*, 2006 WL 2711599, *8 (M.D. Fla. 2006) ("For the most part, evidentiary rulings simply do not raise questions of a constitutional magnitude.").

> Nevertheless, when a state trial court's evidence rulings deny a habeas petitioner fundamental constitutional protections, this [c]ourt's duty requires it to enforce the constitution's guarantees by granting the petition for a writ of habeas corpus. Before relief can be granted the error must rise to the level of a denial of fundamental fairness. Such fundamental unfairness violates the

Due Process Clause of the Federal Constitution.

A denial of fundamental fairness occurs whenever the improper evidence is material in the sense of a crucial, critical, highly significant factor.

*Snowden, supra* (internal citations and quotation marks omitted). Petitioner has made no showing that any improper evidence was admitted by the trial court. Therefore, the evidentiary rulings made in her case relating to the testimony of Sapp and Crawford do not raise questions of constitutional magnitude. Accordingly, the undersigned simply cannot find that the state court adjudication was contrary to relevant case law nor can it be found that the state court unreasonably applied relevant precedent. Moreover, it is not debatable among reasonable jurists that the result of which petitioner complains is incorrect. Stated differently, it is not debatable among reasonable jurists that the appellate court's rejection of petitioner's hearsay arguments was inherently incorrect.

## **CONCLUSION**

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that her request for habeas corpus relief should be denied.

The instructions which follow the undersigned's signature contain

important information regarding objections to the report and recommendation

of the Magistrate Judge.

      **DONE** this the 20th day of December, 2007.

        s/WILLIAM E. CASSADY

      **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.       *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.       *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

  s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE